United States District Court
Southern District of Texas
ENTERED

FEB 08 2008

Michael N. Milby, Clerk of Court
By Deputy Clerk

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **CIVIL ACTION NO. B-07-108** |
| | § | |
| **EDGAR BENAVIDES,** | § | |
| | § | |
| **Defendant.** | § | |

**OPINION & ORDER**

BE IT REMEMBERED that on ~~January~~ February 8, 2008, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Strike Affirmative Defenses and Opposition to Defendant's Motion to Dismiss. Dkt. No. 6.

## I. Background

This case is a civil action arising out of a dispute regarding Defendant Edgar Benavides' ("Benavides" or "Defendant") procurement of naturalized citizenship of the United States of America on February 1, 1993. *See* Dkt. No. 1. In its complaint, the United States ("Government" or "Plaintiff") alleges that Benavides illegally obtained his naturalization through willful misrepresentation and/or concealment of material facts. *Id.* Specifically, the Government alleges that Benavides failed to disclose to his Immigration and Naturalization Service ("INS"[1]) interviewer that he had knowingly committed a crime for which he had not been arrested, and he falsely stated on his Notice of Naturalization Oath Ceremony form that he had not ever been arrested, cited, charged, indicted, convicted, fined, or imprisoned for violating any law or ordinance. *Id.* at 2–3. The Government maintains that at the time of his INS interview, Benavides had committed the

---

[1]Although the Department of Homeland Security currently operates the department that was formerly known as the Immigration and Naturalization Service, the change does not affect the instant matter, and the Court will refer to the INS throughout this Opinion & Order.

offense of conspiracy to possess with intent to intent to distribute over 500 grams of cocaine. *Id.* at 3. Furthermore, the Government contends that Benavides was indicted, arrested, and pled guilty to that offense after the time of his INS interview and before Benavides' naturalization oath ceremony. *Id.* at 3–4. The Government avers that Benavides' criminal history, as well as his false testimony and willful misrepresentation regarding such history barred a finding that Benavides contained good moral character, which rendered him ineligible for naturalization. *Id.* at 4–8 (citing 8 U.S.C. §§ 1101(f)(1)–(8), 1427(a)). Based on the foregoing, the Government asserts a cause of action against Benavides for revocation of his United States citizenship and cancellation of his Certificate of Naturalization, pursuant to 8 U.S.C. § 1451(a). *Id.* at 4.

Benavides filed his answer to the Government's complaint, and he asserted the following ten affirmative defenses in his pleading: (1) Plaintiff's own negligence, (2) comparative negligence, (3) third party negligence, (4) superseding and/or intervening causes, (5) pre-existing condition, (6) failure to properly serve Defendant, (7) failure to state a claim on which relief may be granted, (8) statute of limitations, (9) laches, and (10) res judicata and collateral estoppel. Dkt. No. 5. In the instant motion, the Government asks the Court to strike all of Benavides' affirmative defenses as being legally insufficient and inapplicable to this matter. Dkt. No. 6. Additionally, to the extent any of Benavides' affirmative defenses may be construed as a motion to dismiss the Government's complaint, the Government requests that the Court deny Benavides' motion. *Id.* Benavides never filed a response to the Government's motion.

## II. Standard for Granting a Motion to Strike Defenses

The Government moves to strike all of Benavides' affirmative defenses, pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) states, in pertinent part, that "the court may order stricken from any pleading any insufficient defense." Motions to strike defenses are generally disfavored and are granted infrequently. LeBlanc v. Severan Trent Services, Inc., No. Civ.A. 05-3703, 2007 WL 689547, at *2 (E.D. La. Mar. 2, 2007) (citing Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc. 677 F.2d 1045, 1057 (5th Cir. 1982)); U.S. v. Cushman & Wakefield, Inc., 275 F.Supp.2d 763, 767 (N.D. Tex. 2002).

However, they may be granted if the defense asserted is insufficient as a matter of law. *LeBlanc*, 2007 WL 689547, at *2 (citing *Kaiser*, 677 F.2d at 1057); *Cushman & Wakefield, Inc.*, 275 F.Supp.2d at 768. Additionally, the moving party must demonstrate "that the allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the proceeding will be prejudicial to the moving party." *Cushman & Wakefield, Inc.*, 275 F.Supp.2d at 768 (quoting Fed. Deposit Ins. Corp. v. Nibolo, 821 F.Supp. 441, 449 (N.D. Tex. 1993)) (addressing the standard as it pertains to a motion to strike defenses contained in an answer). If there is a question of law or fact regarding a particular defense, a court must deny a motion to strike. *Cushman & Wakefield, Inc.*, 275 F.Supp.2d at 768 (citing *Nibolo*, 821 F.Supp. at 449). Whether to grant a motion to strike is within the court's discretion. *Cushman & Wakefield, Inc.*, 275 F.Supp.2d at 768 (citing *Nibolo*, 821 F.Supp. at 449).

## III. Benavides' Asserted Affirmative Defenses

### *A. The First Five Affirmative Defenses*

Benavides first asserts the five following affirmative defenses: (1) Plaintiff's own negligence, (2) comparative negligence, (3) third party negligence, (4) superseding and/or intervening causes, and (5) pre-existing condition. Dkt. No. 5, at 9–10. In the instant motion, the Government contends that Benavides' defenses are insufficient and inapplicable to a citizenship revocation action. Dkt. No. 6, at 1–2. Specifically, the Government avers that Benavides did not plead any factual or legal bases to support the defenses, and the defenses are therefore facially insufficient. *Id.* Furthermore, the Government maintains that it is not seeking relief in this action based upon the conduct of anyone other than Benavides, nor is it seeking monetary damages, and therefore Benavides' defenses are inapplicable. *Id.* at 2. The Government also maintains that the five asserted defenses are inappropriate in this action because a district court does not have any equitable discretion in naturalization actions. *Id.* Specifically, the Government states that an alien does not possess a statutory right to naturalization, and the United States may challenge a certificate of naturalization if it believes that the certificate was

issued in violation of the law. *Id.* The Government also declares that the instant action, in which the United States seeks to enforce its laws, differs from one in which a private litigant sues to recover damages, and therefore the defenses are inapplicable. *Id.*

The Court determines that Benavides' first five affirmative defenses are insufficient as a matter of law. Although the instant matter is a civil action in which the United States seeks an equitable remedy against a private defendant, the United States is not deemed to be identical to a private litigant under similar circumstances. I.N.S. v. Hibi, 414 U.S. 5, 8 (1973). Generally, "neglect of duty on the part of officers of the Government is no defense to a suit by it to enforce a public right or protect a public interest." *Id.* (quoting Utah Power & Light Co. v. U.S., 243 U.S. 389, 409 (1917)). This is because "[a] suit by the United States to enforce and maintain its policy respecting lands which it holds in trust for all the people stands upon a different plane in this and some other respects from the ordinary private suit to regain the title to real property or to remove a cloud from it." *Id.* (quoting *Utah Power & Light Co.*, 243 U.S. at 409). Additionally, an individual has no right to naturalization unless he satisfies all the enumerated statutory requirements, *U.S. v. Ginsberg*, 243 U.S. 472, 475 (1917), and courts have no discretion to deny the Government relief if the evidence presented establishes that the requirements were not met, *Fedorenko v. U.S.*, 449 U.S. 490, 517 (1981). Thus, doctrines such as Benavides' first five affirmative defenses, which all seek to mitigate Benavides' own conduct based upon the actions of another party, have no legal bases in a denaturalization proceeding, and the Government will suffer prejudice of having to expend legal resources to represent itself against these defenses if they remain in Benavides' pleadings. Therefore, the Court strikes Benavides' following affirmative defenses: (1) Plaintiff's own negligence, (2) comparative negligence, (3) third party negligence, (4) superseding and/or intervening causes, and (5) pre-existing condition. Dkt. No. 5, at 9–10.

### *B. The Sixth Affirmative Defense: Failure to Properly Serve Parties*

In his sixth affirmative defense, Benavides asserts that the Government "failed to properly serve the necessary parties to this action." Dkt. No. 5, at 10. In contrast, the Government asserts that Benavides was properly served, and it cites to the Return of

Service included in the case record. Dkt. No. 6, at 3. *See* Dkt. No. 4. Benavides is the only party the Government seeks to sue in the instant action, Dkt. No. 1, and Benavides has not provided any legal or factual allegations regarding whether any other party must be joined in this action.

Because failure of service is a legally viable basis for dismissal of an action, the Court construes Benavides' sixth affirmative defense as a motion to dismiss the action on such grounds. However, the Court determines that evidence in the record establishes that the Government properly effectuated service upon Benavides. Dkt. No. 4. Moreover, the Court finds that no other party must be joined to this action in order for it to proceed. Therefore, the Court denies Benavides' motion to dismiss based on the Government's alleged failure to properly effectuate service upon Benavides and strikes Benavides' sixth affirmative defense from his answer. Dkt. No. 5, at 10.

### *C. The Seventh Affirmative Defense: Failure to State a Claim Upon Which Relief Can Be Granted*

In his seventh affirmative defense, Benavides asserts that "Plaintiff has filed to state a claim to which relief can be granted." Dkt. No. 5, at 10. Because failure to state a claim upon which relief can be granted is a legally viable basis upon which to move for dismissal of an action, the Court will construe Benavides' defense as a motion to dismiss the Government's complaint. *See* FED. R. CIV. P. 12(b)(6).

As a preliminary matter, the Court notes that Benavides does not provide any legal authority or factual details to support his assertion. Failure to include citations to legal authority in an opposed motion is grounds for striking a motion. *See* LOCAL RULE LR 7.1B. However, aside from this defect, Benavides' assertion fails on its merits. A motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6) is "viewed with disfavor and is rarely granted." Kennedy v. Tangipahoa Parish Library Bd. of Control, 224 F.3d 359, 365 (5th Cir. 2000); Lowrey v. Texas A & M University System, 117 F.3d 242, 247(5th Cir. 1997) (quoting Kaiser Aluminum & Chemical Sales, Inc. v. Avondale Shipyards, 677 F.2d 1045, 1050 (5th Cir. 1982)). Fifth Circuit law dictates that a district court must accept all well-pleaded facts as true and view them in the light most favorable

to the plaintiff. *See* Baker v. Putnal, 75 F.3d 190, 196 (5th Cir. 1996). *See also* Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 498 (5th Cir. 2000). A complaint will not be dismissed "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957). *See also* Baton Rouge Bldg. & Constr. Trades Council AFL-CIO v. Jacobs Constructors, Inc., 804 F.2d 879, 881 (5th Cir. 1986). The Fifth Circuit has held, however, that dismissal is appropriate "if the complaint lacks an allegation regarding a required element necessary to obtain relief." Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995) (citation omitted).

In the present case, the Government has asserted a claim for denaturalization pursuant to 8 U.S.C. § 1451(a). Under §1451(a), United States attorneys have the duty to institute proceedings to revoke and cancel a naturalization certificate "on the ground that such order and certification of naturalization were illegally procured or were procured by concealment of a material fact or by willful misrepresentation." *Id.* The Government's complaint includes detailed facts supporting the Court's jurisdiction over this mater, the factual background concerning Benavides' naturalization process, and three counts of alleged illegal procurement of the naturalization certificate and/or concealment or willful misrepresentation of a material fact. *See* Dkt. No. 1. Specifically, the Government alleges that Benavides had a criminal history, and falsely testified, concealed, and/or willfully misrepresented that history to the INS. *Id.* at 2–8. Taking the Government's well-pleaded facts as true and viewing them in the light most favorable to the Government, the Court finds that the Government has set forth facts in support of its claim that could entitle it to relief. *See Conley*, 355 U.S. at 45–46. Therefore, the Court denies Benavides' motion to dismiss the Government's case for failure to state a claim upon which relief can be granted. Accordingly, the Court strikes Benavides' seventh affirmative defense.

### *D. The Eighth Affirmative Defense: Statute of Limitations*

Benavides' eighth affirmative defense states that "Plaintiff is barred by the statute of limitations." Dkt. No. 5, at 10. Benavides does not provide any legal authority for this position. In response, the Government maintains that there is no statute of limitations

explicitly applicable to such proceedings, and the United States is therefore not time-barred from enforcing its rights. Dkt. No. 6, at 6.

The Court determines that Benavides' eighth asserted defense is insufficient as a matter of law. Generally, the United States is not subject to a statute of limitations unless Congress specifically sets such a time limitation. U.S. v. City of Palm Beach Gardens, 635 F.2d 337, 339 (5th Cir. Jan. 1981) (citing Guaranty Trust Co. v. U.S., 304 U.S. 126 (1938)). *See* U.S. v. Costello, 275 F.2d 355, 356 (2d Cir. 1960), *aff'd*, 365 U.S. 265 (1961). This policy derives from the principle that the United States, as a sovereign, should not be prevented from enforcing its rights because of the mere passage of time. *City of Palm Beach Gardens*, 635 F.2d at 339. The doctrine "furthers the public policy objective of protecting rights vested in the government of the benefit of all from the inadvertence of the agent upon which the government must necessarily rely." *Id.* at 440 (citing *Guaranty Trust Co.*, 304 U.S. at 132). Section 1451(a) does not contain any provision regarding time limitations upon the United States when bringing an naturalization revocation proceeding. Moreover, although the instant action was initiated fourteen years after Benavides was issued his naturalization certificate, there have been numerous cases in which the Government was not considered untimely when it proceeded with revocation proceedings despite a significant period of delay. *See* Kungys v. U.S., 485 U.S. 759, 764 (1988) (in which there was a lapse of twenty-eight years between naturalization and the initiation of denaturalization proceedings); Costello v. U.S., 365 U.S. 265, 281 (1961) (including a lapse of twenty-seven years before denaturalization proceedings commenced); U.S. v. Fedorenko, 597 F.2d 946 (5th Cir. 1979), *aff'd*, 449 U.S. 490 (1981) (concerning visa and naturalization proceedings that occurred in 1949 and 1970, respectively); United States v. Szehinskyj, 104 F.Supp.2d 480 (E.D. Pa. 2000), *aff'd*, 277 F.3d 331 (3d Cir. 2002) (involving a lapse of time of over 40 years). Based on the foregoing, the Court determines that a statute of limitations defense is legally insufficient in this action, and the Government will suffer prejudice if it is forced to expend legal resources to refute this defense. Accordingly, the Court strikes Benavides' eighth affirmative defense. Dkt. No. 5, at 10.

### *E. The Ninth Affirmative Defense: Laches*

In his ninth affirmative defense, Benavides asserts that the Government "is barred to prosecute this matter under the doctrine of laches." Dkt. No. 5, at 11. Benavides does not provide any factual or legal details in support of either of this defense. The Government maintains that the defense of laches is legally inapplicable to a denaturalization proceeding because the defense may not be asserted against a sovereign. Dkt. No. 6, at 7–8.

Laches is an affirmative defense in equity that is analogous to statutes of limitations in actions law. *Nibolo*, 821 F.Supp. at 450 (citing Clark v. Amoco Production Co., 794 F.2d 967, 971 (5th Cir. 1986). The doctrine prevents a party from seeking relief if they have improperly held off from pursuing its claims and the resulting delay would cause prejudice to the opposing party. *Nibolo*, 821 F.Supp. at 450. Although it is an equitable defense, laches may apply in actions at law when a statute of limitations does not exist. *Id.* at 451. However, the doctrine of laches may not be maintained against the United States when it acts in its sovereign capacity to protect the public interest or enforce a public right. *Id.* (citing U.S. Popovich, 820 F.2d 134, 136 (5th Cir. 1987)). Additionally, many circuit and district courts have consistently held that the doctrine is not applicable to denaturalization proceedings. Costello v. U.S., 356 U.S. at 281 (citations omitted). In the present case, the United States is attempting to enforce its right and duty to cancel a naturalization certificate that it believes was inappropriately obtained. *See* 8 U.S.C. § 1451(a). Therefore, based on the foregoing, the Court determines that laches is a legally insufficient defense to the instant matter, and its inclusion in Benavides' answer will cause the Government to suffer prejudice by expending legal resources to attack the asserted defense. Accordingly, the Court strikes Benavides' ninth affirmative defense. Dkt. No. 5, at 11.

### *F. The Tenth Affirmative Defenses: Res Judicata and/or Collateral Estoppel*

Benavides' tenth affirmative defense states that the Government "is barred under the doctrine of Res Judicata and/or Collateral Estoppel." *Id.* Benavides does not provide any factual or legal details in support of his position. The Government maintains that estoppel, like laches, may not be asserted against a sovereign. Dkt. No. 6, at 7–8. In

regards to res judicata, the Government contends that the doctrine does not apply to denaturalization proceedings because there is no right to naturalization unless all statutory requirements are met, and the Government may revoke a naturalization certificate if it is revealed that the requirements were not complied with at the time the certificate was issued. *Id.* at 8–9.

Res judicata applies when four conditions are met: (1) the parties to the original and subsequent suits are in privity or identical, (2) a court of competent jurisdiction renders a judgment in the first action, (3) the judgment rendered in the first action is a final judgment on the merits, and (4) the same causes of action or claims are involved in the original and subsequent suits. Proctor & Gamble Co. v. Amway Corp., 376 F.3d 496, 499 (5th Cir. 2004). If all four factors are present, all future claims or defenses that arise from the same nucleus of operative facts are eliminated. *Id. See also* Lee v. City of San Antonio, No 05-51113, 2006 WL 2041051, at *2 (5th Cir. July 18, 2006) (stating that res judicata bars all claims or defenses that could have been brought in the adjudication of the original action). Collateral estoppel applies to an action "when a previously litigated issue of law or fact was identical to the present issue, actually litigated, necessary to a final judgment, and reviewed under the same standard as the present issue." Duffy & McGovern Accommodation Services v. QCI Marine Offshore, Inc., 448 F.3d 825, 829 (5th Cir. 2006). In order to determine whether a claim is identical to one previously presented, "the critical issue is not the relief requested or the theory asserted but whether plaintiff bases the two actions on [the] same nucleus of operative facts." *In re* Vollbracht, No. 06-60619, 2007 WL 314488, at *2 (5th Cir. Oct. 24, 2007) (quoting *In re* Howe, 913 F.2d 1138, 1144 (5th Cir. 1990)).

The present action involves a allegation by the Government that Benavides illegally procured his naturalization certificate in 1993. Benavides' naturalization proceedings throughout 1992–1993 involved the Government's evaluation of whether Benavides satisfied the statutory requirements necessary to obtain naturalized citizenship. At that time, the Government determined that Benavides did meet the statutory requirements. In his answer, Benavides did not provide any explanation as to how he intends to assert his res judicata and collateral estoppel defenses. Should Benavides intend to raise res

judicata or collateral estoppel based on the Government's award of naturalized citizenship in 1993, the Court finds that they are legally insufficient defenses. Section 1451(a) specifically gives the United States the right to challenge a certificate of citizenship that it believes was illegally procured or obtained through concealment or willful misrepresentation of a material fact. The Supreme Court has stated that "[n]o alien has the slightest right to naturalization unless all statutory requirements are complied with; and every certificate of citizenship must be treated as granted upon condition that the government may challenge it, as provided in [the predecessor to §1451(a)], and demand its cancelation unless issued in accordance with such requirements." *Ginsberg*, 243 U.S. at 475. Therefore, the Court strikes Benavides' tenth affirmative defenses of res judicata and collateral estoppel, in accordance with the aforementioned interpretation of those defenses.

However, if Benavides intends to raise res judicata or collateral estoppel based on prior proceedings pursuant to § 1451(a), then those defenses could be viable and should remain in Benavides' answer.

## IV. Conclusion

Based on the foregoing, the Court **GRANTS IN PART and DENIES IN PART** Plaintiff's Motion to Strike Affirmative Defenses and Opposition to Defendant's Motion to Dismiss. Dkt. No. 6. The Court **GRANTS** the Government's motion and **STRIKES** Benavides' first nine affirmative defenses. The Court both **GRANTS and DENIES** the Government's motion as to Benavides' tenth affirmative defenses, in accordance with Section III.F. Thus, the only remaining affirmative defenses in Benavides' answer are res judicata and collateral estoppel, if Benavides intends to raise those defenses based on prior proceedings pursuant to § 1451(a).

DONE at Brownsville, Texas, on February 8, 2008.

Hilda G. Tagle
United States District Judge